EDWIN H. HUSSEY *vs.* DAVID TRACHT & another.

Hampden.    May 8, 1956. — November 14, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, & WILLIAMS, JJ.

*Negligence,* Elevator, Repairs.

Evidence that while a repairer of a freight elevator was operating it to test it and was in a position where he could see the lifting cable running over the drum the cable developed some slack which came off the drum, "got wound around the shaft" and "started working against itself," with the result that the cable eventually broke and the elevator fell into the pit, warranted a finding of negligence on the part of the repairer toward one employed on the premises who was riding on the elevator to assist the repairer and was injured when it fell.

TORT. Writ in the Superior Court dated May 19, 1954.

At the trial before *Broadhurst,* J., a motion by the defendants for a directed verdict was denied and there was a verdict for the plaintiff. The defendants alleged exceptions.

*Joseph C. Stothert,* (*Tullis A. Francesconi* with him,) for the defendants.

*Robert J. Moran*, (*Ralph S. Spooner* with him,) for the plaintiff.

WILLIAMS, J. The plaintiff, who was employed by Sunshine Poultry, Incorporated, at Stafford Springs, Connecticut, brought this action to recover for personal injuries received at the company plant on July 17, 1951, by the fall of a freight elevator on which he was riding. He alleged in his declaration that the defendants, who were copartners doing business as Tracht and Roche, had undertaken to repair the elevator but made the repairs in such a careless and negligent manner that as a result the elevator was caused to fall. The evidence in its aspect most favorable to the contentions of the plaintiff was as follows: The plaintiff had been employed at the Stafford Springs plant for about four months in charge of the company's business which was that of raising chickens. The plant or "mill," as it was called, was a four story building equipped with a freight elevator of undisclosed age which ran on two vertical tracks and was open at the top. Its operation was controlled by a shipper rope or cable. The defendant Tracht was president and the defendant Roche treasurer of the company. The defendants were engaged in various branches of the poultry and poultry feed business and maintained their office at Palmer. Individually, or as partners, they owned and controlled several corporations all of which had their headquarters at the office of the partnership. The partners employed as a handy man one Fountain, who had some experience as a carpenter and at their direction visited the premises of the different corporations to make repairs when needed. On July 16 the plaintiff who had a "day off" was told by the man who took his place that "he was having trouble with the elevator; that he had put feed on . . . [it] and it tilted and sunk into the pit." The plaintiff "looked the elevator over and finding that there was nothing he could do . . . called and talked to Mr. Tracht, who said he would send Mr. Fountain to take care of it the next morning, and he instructed . . . [the plaintiff] to give Mr. Fountain a hand." Fountain came and instructed

him to take a crowbar and to help lift the elevator. Fountain replaced it on the track and ran it up and down a few times operating it from the first floor and, as the plaintiff testified, "it seemed to go alright." Fountain could see the cable running over the wheel. He and the plaintiff then got on the elevator and Fountain told the plaintiff to watch the track on the side while he, Fountain, watched the cables. When the elevator approached the third floor it seemed to pick up speed. The lifting cable broke with a snap and the elevator fell to the bottom of the pit. The plaintiff fell with it and was injured. Fountain kept himself from falling by clinging to the shipper rope. The only evidence as to the cause of the break in the cable was furnished by Fountain who testified that after the accident he went to the third floor and "found that the cable had some slack that came off the drum and started working against itself and eventually sheared off . . . the break in the cable was very clean." The "cause of the accident was slack in the cable that got wound around the shaft and . . . it was a condition which he believes he could have discovered if he had gone up and inspected the cable before the accident." The defendants excepted to the denial of their motion for a directed verdict and the jury found for the plaintiff.

The injury to the plaintiff resulted not from the acts of Fountain in replacing the elevator upon the track, but from his subsequent action in testing it to see if it was in good working order. Such testing, we think, could be found to be a part of the repair job, which he was expected by his employer to perform. See *Van Steenbergen* v. *Barrett*, 286 Mass. 400, 404–405. In the course of the testing the elevator fell with the plaintiff on it, caused, as it later appeared, by the cable being slack and coming off the drum. The jury could find that the slackness of the cable, which Fountain could see running over the drum, should have been noticed by him and that he was negligent in operating the elevator with the cable in that condition.

*Exceptions overruled.*